IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL MANOS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:14-cv-1128-P-BN |
| | § | |
| SUSAN HAWK, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

On March 31, 2014, Plaintiff Michael Manos's *pro se* civil rights action was transferred to this Court from the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and 1406(a). *See* Dkt. No. 7. On August 28, 2014, Chief Judge Jorge A. Solis referred this action to the undersigned United States magistrate judge for screening under 28 U.S.C. § 636(b). *See* Dkt. No. 26; *see also* Dkt. No. 35 (re-referring this case to the undersigned on December 5, 2014, after Plaintiff's effort to comply with the notice of deficiency entered August 29, 2014). The undersigned now enters the following findings, conclusions of law, and recommendation.

**Background**

At the time this action was transferred to this Court, the transferor court vacated its order granting Plaintiff leave to proceed *in forma pauperis* and withdrew all summonses issued to all defendants. *See* Dkt. No. 7 at 1.

Accordingly, as Chief Judge Solis noted in his August 28, 2014 order,

> Plaintiff has not received permission to proceed *in forma pauperis* in this matter, the lawsuit has not been screened under 28 U.S.C. §§ 1915A and 1915(e)(2)(B), and no defendants have been properly served. The Court must determine whether Plaintiff may proceed *in forma pauperis*, the case must be screened, and summonses must issue if any defendants or claims survive initial screening. Only at that time will the Court consider any motion filed pursuant to Fed. R. Civ. P. 12(b).

Dkt. No. 26 at 1. The Court, therefore, denied the then-pending motions to dismiss and Plaintiff's motion for extension of time to respond and referred this action to the undersigned for screening. *See id.* at 1-2.

The next day, the Court issued an order and notice of deficiency [Dkt. No. 27], requiring that, no later than September 19, 2014, Plaintiff either pay the statutory filing fee or submit a request to proceed *in forma pauperis* and file an amended complaint on the Court's civil rights form, as required under Miscellaneous Order No. 14 (N.D. Tex.). On Plaintiff's timely motion [Dkt. No. 28], dated September 10, 2014, that deadline was extended to October 19, 2014. *See* Dkt. No. 29.

On November 19, 2014, because Plaintiff had failed to correct the deficiencies the Court noted on August 29, 2014, the undersigned recommended that the Court dismiss his action *sua sponte* without prejudice pursuant to Federal Rule of Civil Procedure 41(b) but also recommended that, if Plaintiff responded within 14 days to correct the deficiencies, the Court should refer the case back to the magistrate judge for further screening. *See* Dkt. No. 31.

Plaintiff's amended complaint [Dkt. No. 33] and motion for leave to proceed *in forma pauperis* [Dkt. No. 34] were docketed on December 4, 2014. And, on December

5, 2014, Chief Judge Solis adopted the undersigned's alternative recommendation and re-referred the case for further screening. *See* Dkt. No. 35. The Court issued interrogatories to Plaintiff on December 19, 2014, *see* Dkt. No. 37, to which Plaintiff has submitted responses, *see* Dkt. No. 39.

Through his amended complaint and interrogatory responses, Plaintiff, a citizen of New York, asserts claims against four defendants alleged to be citizens of Texas. *See generally* Dkt. No. 33. Plaintiff no longer asserts claims against Craig Watkins, Jennifer Balido, or the City of Dallas, Texas. *See id.* He invokes the Court's federal question and diversity jurisdictions, *see id.* at 3, and claims that the defendants committed "slander, fraud, defamation of character, conspiracy ..., violat[ed] the ADA" and his civil rights under the United States Constitution, *id.*; *see also* Dkt. No. 39 at 2 ("I was slandered, lost revenue, was caused irreparable mental health issues, [and was] deprived of my liberty and physically abused."). Although Plaintiff invokes the "ADA," he fails to explain whether this acronym stands for, for example, the Americans with Disabilities Act. Nor does Plaintiff allege specific facts establishing a claim under the ADA.

Instead, Plaintiff alleges that he met Defendant Susan Hawk, then a Texas state judge, and Defendants Terry Moore and Mindy Sauter, then state prosecutors, in October 2009 and that, from that date through January 2010, the four became friends. *See* Dkt. No. 33 at 4-5. According to Plaintiff, that relationship changed later in 2010, when Hawk, Moore, and Sauter discovered that Plaintiff "was actually a parole violator living in Dallas under an assumed name." *Id.* at 5. Related to this discovery, Plaintiff

alleges that when he left Dallas on January 18, 2010, "there were no charges pending against him, and no warrants[, t]hough he was in violation of his New York State parole." *Id.* Plaintiff then states he was arrested in New York on January 22, 2010. *See id.*

Plaintiff claims that Defendants Moore and Sauter "fabricated" three criminal cases against him. *Id.*; *see also id.* (relatedly alleging that Moore and Sauter "abused the power they were granted by their office, subverted the court system, Texas law and plaintiff's due process on June 11, 2010 by having [Plaintiff's criminal cases transferred to] Judge Hawk['s court] and raising the bail on each charge to $15,000"; and that Hawk, Moore, and Sauter "violated his constitutional right to appear before a grand jury which was supposedly held in [Judge Hawk's court]"). Among other allegations, Plaintiff further asserts (1) that his request for a speedy trial was ignored, (2) that Hawk, Moore, and Sauter illegally raised his bail to $100,000, (3) that the three defendants failed to disclose their personal connection to Plaintiff to his defense counsel, and (4) that these defendants thwarted Plaintiff's attempt to obtain a restraining order against them. *Id.* at 5-6.

In June 2011, Plaintiff alleges that Judge Hawk threatened that "if he did not take a 7 year probated sentence he would be sitting in Dallas County Jail forever" and that he was "harassed until he was told to plead guilty by his defense counsel and forced to take a 7 year probated sentence plus 18 months jail sentences." *Id.* at 6; *see also id.* (further alleging (1) that $10,000 previously confiscated from Plaintiff was taken to pay part of his ordered restitution, (2) that "[h]e was not told by his counsel

-4-

that in fact under Texas law, an actual sentence of jail time, probation and restitution is illegal[,]" and (3) that "[a]t sentencing, [Judge] Hawk clearly stated on the record, 'You have gotten away with this for a long time[,]' indicating that she was sentencing the plaintiff for her own reasons and not the issues at hand"). Plaintiff also alleges that, in May 2012 Hawk, Moore, and Sauter swore out bogus probation violation warrants on him, causing him to unnecessarily incur $7,500 in legal fees. *See id.* at 6-7; *see also* Dkt. No. 39 at 2 (adding a claim that "Hawk allowed the Plaintiff to be slapped around outside of the court room doing nothing to stop it").

As to Defendant Tanya Eiserer, identified in the complaint as a reporter affiliated with the Dallas Morning News and television station WFAA, Plaintiff alleges that she maximized negative publicity against him, printed untrue accusations against him, and was allowed into Judge Hawk's courtroom "to take unauthorized pictures of [him]" – which is the basis of Plaintiff seeking $500,000 from Eiserer ("for the loss of work and revenue from the use of copy righted photographs that she used and profited from without [his] express permission"). Dkt. No. 33 at 5-7; *see also* Dkt. No. 39 at 2 (Eiserer "continued to profit and illegally use copyrighted photos without permission. In addition she knowingly printed false facts slandering and defaming the Plaintiff for personal gain and at the behest of others."). Thus, the specific factual allegations tied to Defendant Eiserer only support claims for theft/conversion and slander/defamation.

Plaintiff also seeks $3 million from Hawk, Moore, and Sauter. *See* Dkt. No. 33 at 7.

The undersigned now concludes that this action should be summarily dismissed

under 28 U.S.C. § 1915(e)(2)(B).

**Legal Standards**

A district court may summarily dismiss a complaint filed *in forma pauperis* if it concludes that the action:

(i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B); *see Shorts v. Chinese Restaurant*, Civil Action No. 10–1701, 2010 WL 3800894, at *1 (E.D. La. Aug. 31, 2010), *rec. adopted*, 2010 WL 3800907 (E.D. La. Sept. 20, 2010) ("In cases in which a plaintiff seeks to proceed without the prepayment of the required filing fee and attendant fees for service of process, courts have long had the authority to dismiss *in forma pauperis* complaints if satisfied that the claims asserted are frivolous or malicious." (citing Section 1915(e)(2)(B) and its predecessor statute)).

An action is frivolous if it lacks an arguable basis in either law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) ("A claim may be dismissed as frivolous if it does not have an arguable basis in fact or law."). A complaint is without an arguable basis in law if it is grounded upon an untenable, discredited, or indisputably meritless legal theory, including alleged violations of a legal interest that clearly does not exist. *See Neitzke*, 490 U.S. at 326-27; *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

The Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiff must allege more than labels and conclusions, and, while the Court must accept all of Plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

But, "to survive a motion to dismiss[,]" under *Twombly* and *Iqbal*, Plaintiff need

only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

Although a court generally cannot look beyond the pleadings in determining whether claims should be dismissed, the pleadings here include Plaintiff's responses to the Court's interrogatories [Dkt. No. 39], which "become part of a plaintiff's pleadings." *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996)).

## Analysis

<u>Judicial Immunity</u>

As to then-Judge Hawk, she is absolutely immune from all claims Plaintiff asserts against her, and those claims should be dismissed as frivolous.

Judges generally have absolute immunity for judicial actions taken within the scope of their jurisdiction, which also means judicial officers are generally immune from suits for money damages. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam); *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 221-22 (5th Cir. 2009). "Judicial immunity can be overcome only by showing that the actions complained of were nonjudicial in nature or by showing that the actions were taken in the complete absence of all jurisdiction." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994). "A judge's acts are judicial in nature if they are normally performed by a judge and the parties affected dealt with the judge in his judicial

capacity." *Id.* at 285 (internal quotation marks omitted). But "judicial immunity is not overcome by allegations of bad faith or malice[,]" *Mireles*, 502 U.S. at 11, and "[d]isagreeing with a judge's actions does not justify depriving that judge of his or her immunity[,]" *Greenlee v. U.S. Dist. Court*, No. 09–2243–CV–FJG, 2009 WL 1424514, at *2 (D. Kan. May 21, 2009) (citing *Stump*, 435 U.S. at 363)).

While Plaintiff claims that he became social friends with Hawk before the harms Plaintiff alleges took place, Plaintiff's allegations against Hawk are solely based on alleged interactions with her in her judicial capacity. As such, Hawk is absolutely immune from all claims asserted against her in this action, and those claims should be dismissed with prejudice as frivolous. *See Boyd*, 31 F.3d at 285.

Prosecutorial Immunity

Plaintiff's claims against then-state prosecutors Moore and Sauter are similarly legally frivolous because Moore and Sauter are absolutely immune from a suit for damages for actions taken within the scope of their duties as prosecutors. *See Imbler v. Pachtman*, 424 U.S. 409, 420-24 (1976); *see also Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 634 n.2 (5th Cir. 2000) ("As to prosecutors, entitlement [to immunity] flows from performance of activities that are intimately associated with the judicial process, such as initiating and prosecuting a criminal case." (citing *Imbler*, 424 U.S. at 430)).

A plaintiff "may overcome a defendant's prosecutorial immunity by alleging actions that fall outside 'initiating the prosecution and in carrying the case through the judicial process.'" *DeLeon v. City of Dallas*, No. 3:02-cv-1097-K, 2003 WL 22244773, at

*1 (N.D. Tex. Sept. 16, 2003), *reversed in part on other grounds*, 141 F. App'x 258 (5th Cir. July 7, 2005) (quoting *Boyd*, 31 F.3d at 285).

> Prosecutorial immunity, however, applies even if the prosecutor is accused of knowingly using perjured testimony, withholding exculpatory evidence, and failing to make full disclosures of facts. State prosecutors are absolutely immune for their actions intimately associated with the judicial process, including their actions in seeking the issuance of an arrest warrant.

*Id.* (citations and quotation marks omitted); *see Bibb v. Montgomery Cnty. Sheriff*, Civil Action No. H-13-3736, 2014 WL 3828232, at *8 (S.D. Tex. July 30, 2014) ("[A] prosecutor is entitled to absolute immunity for his action in commencing a prosecution and all actions during the course and scope of the prosecution, even against charges that he acted 'maliciously, wantonly, or negligently.'" (quoting *Imbler*, 424 U.S. at 430-31)).

Plaintiff has failed to allege any specific facts to overcome Moore's and Sauter's prosecutorial immunity. His allegations against these defendants solely concern their initiation of, and how they carried out, the criminal case(s) against Plaintiff. Accordingly, Moore and Sauter, too, are absolutely immune from all claims asserted against them in this action, and those claims also should be dismissed with prejudice as frivolous.

Statute of Limitations

Plaintiff initiated this lawsuit against Defendants Hawk, Moore, and Sauter (and others not named in the operative amended complaint) in the Eastern District of New York on February 27, 2014. *See* Dkt. No. 1 at 10. The claims against Defendant Eiserer first appeared in the amended complaint Plaintiff filed on December 4, 2014. *See* Dkt. No. 33 at 5-7. Through his sworn responses to the Court's interrogatories, Plaintiff identifies that the defendants' alleged actions occurred from January 2010 through October 2013 and states that he "became aware of the violations in September 2011, when [he] discovered the videos and photos[, presumably those taken by Defendant Eiserer,] online." *Compare* Dkt. No. 37 at 3, *with* Dkt. No. 39 at 2.

To the extent that this lawsuit is not barred by absolute immunity, all possible causes of action Plaintiff asserts – except possibly fraud under Texas law – are barred by limitations and, as such, are due to be dismissed under Section 1915(e)(2)(B). *Cf. Wagner v. CitiMortgage, Inc.*, No. 4:14-cv-657-A, 2014 WL 5786956, at *5 (N.D. Tex. Nov. 6, 2014) ("In Texas, fraud claims are subject to a four-year statute of limitations." (citing TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4); *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 725 (Tex. 1990)).

But any fraud claims still should be dismissed. As to claims of fraud against Defendants Hawk, Moore, and Sauter, as explained above, all three are absolutely immune and, as is discussed below, because Plaintiff's factual allegations against these defendants (in support of any fraud claims) are necessarily inconsistent with the validity of his unchallenged conviction, the claims are barred by *Heck v. Humphrey*,

512 U.S. 477 (1994). As to any fraud claims against Defendant Eiserer, Plaintiff's factual assertions cannot support a claim of fraud under Federal Rule of Civil Procedure 9(b), and, thus, any fraud claims asserted against her also should be dismissed, under 28 U.S.C. § 1915(e)(2)(B)(ii). *See, e.g.*, *Ortega v. BOFA Countrywide Home Loans*, No. 10CV2407 DMS (CAB), 2010 WL 5014404, at *1 (S.D. Cal. Dec. 3, 2010) (dismissing *sua sponte pro se* plaintiffs' fraud claims because they did not "plead their allegations of fraudulent conduct with sufficient particularity"); *see also Toole v. Obama*, No. 1:12CV363–KS–MTP, at 2013 WL 943458, *1 (S.D. Miss. Mar. 11, 2013) (after *pro se* plaintiff was given an opportunity to explain the basis of her fraud claim – just like Plaintiff here was given, see Dkt. No. 37 at 3 (Question No. 1) – the court determined that the "[p]laintiff's vague, ill-defined allegations are insufficient under Rule 9(b) and will be dismissed for failure to state a claim upon which relief may be granted." (citing 28 U.S.C. § 1915(e)(2)(B)(ii))).

To the extent Plaintiff's complaints are constitutional, such Section 1983 claims are governed by Texas's two-year, personal-injury limitations statute. *See Wilson v. Garcia*, 471 U.S. 261, 273-76 (1985) (state statute of limitations period for personal-injury actions applies to all claims under 42 U.S.C. § 1983); *see also Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); TEX. CIV. PRAC. & REM. CODE § 16.003(a). But "[a]ccrual of a claim under § 1983 is determined by federal law, under which a claim generally accrues when a plaintiff knows or has reason to know of the injury giving rise to the cause of action[,]" *Goosby v. Robertson*, Civil Action No. 7:13-cv-123-O, 2014 WL 3670090, at *2 (N.D. Tex. July 22, 2014) (citations omitted),

which, according to Plaintiff, was in September 2011, *see* Dkt. No. 39 at 2. Because this lawsuit was not filed until February 2014 – more than three years after any Section 1983 claims accrued – any claim that Defendants violated Plaintiff's civil rights is barred by limitations and should be dismissed. *Cf. Goosby*, 2014 WL 3670090, at *2 ("As all claims under 42 U.S.C. § 1983 are barred by the applicable statutes of limitations, they must be dismissed under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(b)(i) and (ii).").

To the extent Plaintiff is asserting causes of action for slander and defamation under state law – and liberally construing Plaintiff's complaint as alleging that the allegedly bogus probation violation warrants that Hawk, Moore, and Saucer swore out in May 2012 is the most recent specific factual allegation related to such causes of action, *see* Dkt. No. 33 at 6-7 – because Plaintiff filed this action more than one year after May 2012, the Court should dismiss any state-claw claims of slander and defamation as a matter of law. *See, e.g., Hill v. Jacobs Eng'g Group, Inc.*, Civil Action No. H–10–1506, 2011 WL 2565331, at *4 (S.D. Tex. June 27, 2011) ("As a matter of law, the court should dismiss a defamation claim filed more than a year after the defamatory comments were made." (citing TEX. CIV. PRAC. & REM. CODE § 16.002(a) ("A person must bring suit for malicious prosecution, libel, slander, or breach of promise of marriage no later than one year after the day the cause of action accrues."); *Grogan v. Sav. of Am., Inc.*, 118 F. Supp. 2d 741, 756 (S.D. Tex.1999) (granting summary judgment because under Texas law, "a one-year statute of limitations applies to defamation claims, with the claim accruing when the words are spoken and the injury

occurs")).

Although Plaintiff alleges in his interrogatory responses that he "had no access to the internet or paper so [he] did not know what [Eiserer] was printing or saying about [him] until [he] was released[,]" he alleges he was released in June 2011 (and further alleges that he discovered the applicable videos and photos online in September 2011). Dkt. No. 39 at 2-3. Therefore, May 2012 appears to be the most recent date applicable to claims of defamation or slander.

To the extent that Plaintiff is asserting a claim for theft of copyrighted material against Defendant Eiserer, he states that he "discovered the videos and photos online" in September 2011. Dkt. No. 39 at 2. "Generally, a conversion claim accrues, and the limitations period begins to run, 'at the time of the unlawful taking,'" *Ortega v. Young Again Prods., Inc.*, 548 F. App'x 108, 112 (5th Cir. Nov. 27, 2013) (quoting *Pipes v. Hemingway*, 358 S.W.3d 438, 450 (Tex. App. – Dallas 2012, no pet.)), which – based on Plaintiff's allegations – would appear to be in February 2011, when Eiserer allegedly took the claimed-to-be "unauthorized pictures of the plaintiff for use and profit," Dkt. No. 33 at 6. But, even using September 2011 as the date any conversion claim against Eiserer accrued, such a claim is barred by the applicable statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a) ("[A] person [generally] must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues.").

*Heck v. Humphrey*

The entirety of Plaintiff's claims against Defendants Hawk, Moore, and Sauter are based on specific factual allegations that undercut the legitimacy of his 2011 Texas conviction. To the extent this lawsuit is not due to be dismissed because Plaintiff's claims are barred by absolute immunity and limitations, the claims he asserts against those defendants are "necessarily inconsistent with the validity of [his] conviction." *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006) (cited in *Bush v. Strain*, 513 F.3d 492, 498 n.14 (5th Cir. 2008)). And because – as Plaintiff admits in his interrogatory responses, *compare* Dkt. No. 37 at 5-6, *with* Dkt. No. 39 at 3 – his conviction has not been reversed on direct appeal, expunged by executive order, or otherwise declared invalid by a state tribunal or federal court, his claims against those defendants are barred. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

"The *Heck* court held that a civil tort action, including an action under section 1983, is not an appropriate vehicle for challenging the validity of outstanding criminal judgments." *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 652 (5th Cir. 2007) (citing 512 U.S. at 486); *see id.* at 654 (in this circuit, "*Heck* stands first for 'the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments'" (quoting 512 U.S. at 486, and citing *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000) (in which the United States Court of Appeals for the Fifth Circuit determined it was bound to apply *Heck*'s "favorable termination" requirement to custodial as well as released inmates))).

As more recently explained by the Fifth Circuit,

> *Heck* prohibits a plaintiff from using a § 1983 suit to challenge the validity of his conviction or sentence, unless the plaintiff demonstrates that the conviction or sentence has in some way been reversed or invalidated. *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008). Consequently, "a plaintiff's claim is *Heck*-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction." [*DeLeon*, 488 F.3d] at 498 n.14 (alteration omitted) (quoting *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006)); *see also Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ("It is irrelevant that [a plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, Heck kicks in and bars his civil suit."). This is because "factual assertions in pleadings are ... judicial admissions conclusively binding on the party that made them." *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (alterations and citation omitted).

*Daigre v. City of Waveland, Miss.*, 549 F. App'x 283. 286 (5th Cir. Dec. 18, 2013) (per curiam); *see Whatley v. Coffin*, 496 F. App'x 414, 417 (5th Cir. Nov. 7, 2012) (per curiam) ("[A]ccepting the version of events alleged by Whatley, his § 1983 claims were necessarily inconsistent with his assault of a public servant convictions and thus are barred by *Heck*." (citing *DeLeon*, 488 F.3d at 656-57)).

Although typically applied in the context of Section 1983, *Heck*'s logic extends outside of constitutional claims and applies to any claim – including state-law claims – based on factual allegations that are necessarily inconsistent with the validity of a conviction that has been neither reversed, expunged, nor otherwise declared invalid. *See Thomas v. La., Dep't of Soc. Servs.*, 406 F. App'x 890, 898 (5th Cir. Dec. 30, 2010) (per curiam) ("because proof of [plaintiff's state law] claims requires proof that [her arrest and criminal conviction] were unlawful ..., the favorable termination rule bars her state law ... claims" (citation omitted)); *Elphage v. Gautreaux*, 969 F. Supp. 2d 493,

515 (M.D. La. 2013) ("As a successful ruling on Ms. Elphage's state law claims for false arrest and imprisonment would undermine her conviction for resisting an officer, her claims are barred by *Heck*." (citations omitted)); *Nelson v. Nordyke*, No. 3:07-cv-1007-M, 2009 WL 648889, at *4 (N.D. Tex. Mar. 10, 2009) ("Officer Jamaica's motion for summary judgment should be granted with respect to Plaintiff's civil rights claims of false arrest and false detention and the corresponding pendant state law claims because those claims are *Heck*-barred, as well, and they should be dismissed until *Heck* conditions are met."); *see also Lavergne v. Martinez*, Civil Action No. 6:13-2121, 2014 WL 897837, at *5 n.2 (W.D. La. Mar. 6, 2014) (discussing authority applying *Heck* to bar state law claims).

By focusing on the facts alleged and whether those factual allegations are necessarily inconsistent with a criminal conviction that has neither been reversed nor invalidated – and not how a plaintiff has labeled the claims based on those facts – the logical extension of the *Heck* bar beyond Section 1983 is, moreover, consistent with the pleading requirements. *See Johnson*, 135 S. Ct. at 346-47 (plaintiffs need not invoke a particular cause of action but instead must state "simply, concisely, and direct events" that entitle them to relief).

**Recommendation**

Plaintiff's lawsuit should be summarily dismissed under 28 U.S.C. § 1915(e)(2)(B).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 27, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE